UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Civil Action No. 19-11384

JOHN DOE, by his Mother and Next Friend, JANE DOE,

    Plaintiff,

v.

CAROL CAVANAUGH, in her Official Capacity as Superintendent of the Hopkinton Public Schools; EVAN BISHOP, in his Official Capacity as Principal of Hopkinton High School, and HOPKINTON PUBLIC SCHOOLS,

    Defendants.

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

### INTRODUCTION

In violation of the United States Constitution, the Massachusetts Constitution, and the law of the Commonwealth, Hopkinton Public Schools suspended Plaintiff John Doe ("Doe"), a student at Hopkinton High School, based solely on his private speech to a small group of friends—speech that did not cause any disruption or disorder within the school or infringe on the rights of any person. Defendants have violated Doe's right to free speech as protected by the First Amendment to the United States Constitution, Art. 16 of the Massachusetts Declaration of Rights, and G.L. c. 71, § 82, as well as his right to due process of law. Accordingly, Doe brings this action for declaratory and injunctive relief to restrain the violation of his rights and to rescind the unlawful suspension. In addition, Doe is entitled to an award of reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

3080722

PARTIES

1. Plaintiff John Doe, a minor, is a resident of Hopkinton, Massachusetts, and a student at Hopkinton High School. He brings this action by and through his mother and next friend, Jane Doe.

2. Defendant Carol Cavanaugh is the Superintendent of Hopkinton Public Schools, located at 89 Hayden Rowe Street, Hopkinton, Massachusetts. She is sued in her official capacity for injunctive relief.

3. Defendant Evan Bishop is the Principal of Hopkinton High School, located at 90 Hayden Rowe Street, Hopkinton, Massachusetts. He is sued in his official capacity for injunctive relief.

4. The Hopkinton Public Schools, located at 89 Hayden Rowe Street, is the public school system for the Town of Hopkinton, Massachusetts.

FACTS

5. On February 3, 2019, the Hopkinton Public Schools received a "bullying report" from a parent of Robert Roe, a student at Hopkinton High School. The report asserted that another Hopkinton High School student—not John Doe—had taken pictures and videos of Roe without his permission.

6. Between February 4 and February 6, 2019, two assistant principals, Josh Hanna and Justin Pominville, conducted an investigation of the allegations in the "bullying report," including the questioning of students who were allegedly involved or who were alleged witnesses.

7. Hanna and Pominville first interviewed Roe, the alleged "target." Roe identified four students who he said took photos and videos of him and whispered about him on the school

bus and at private dinners held at students' houses. Roe said that, as a consequence, he felt "alone" on the bus and at the dinners.

8. Roe did not allege, and the investigation did not reveal, that John Doe took any photos or videos of Roe.

9. Roe did not allege, and the investigation did not reveal, that John Doe whispered about Roe on the school bus or at the group dinners.

10. To the contrary, <u>Roe affirmatively told the administrators during his interview that "[John Doe] was not active in isolating [him]."</u>

11. In short, Roe neither saw nor heard John Doe engage in any conduct that made Roe feel harmed in any way, and he so informed the administrators.

12. The only conduct in which the school found John Doe engaged was private, written speech that Roe did not read at any point prior to lodging the "bullying report."

13. Specifically, as part of the investigation, Hanna and Pominville required one or more of the students (not John Doe) to turn over his/their smartphones so school officials could review photos, videos and/or private messages stored on the phone(s).

14. As a result, the assistant principals discovered a private "group chat" among eight boys, including John Doe, on the social media platform "SnapChat." The group chat was not accessible or visible to anyone who was not a member of the group.

15. The assistant principals also discovered, in the course of reviewing the private chat texts, that certain of the boys posted photos of Roe and/or made remarks about Roe's appearance in the private group chat.

16. Roe was not a member of the private group chat. On information and belief, he did not read or see any of the messages in the group chat prior to the investigation.

17. Doe made a single comment about Roe in the private group chat. That comment was: "[Student A] and [Robert Roe] were made on the same day. [Student A] was the starting product and [Robert Roe] is what it turned into kinda like a game of telephone."

18. The assistant principals prepared a report of their findings (the "investigation report"), which summarized the information they gathered during their investigation. As to John Doe, specifically, they found <u>only</u> that he "made a comment on the group chat." A true and accurate copy of the investigation report, redacted to protect the privacy of the minor students named therein, is attached hereto as **Exhibit A**.

19. The investigation report also explicitly acknowledged that Robert Roe told school administrators that John Doe "was not active" in the conduct about which he and his parent(s) had complained.

20. The assistant principals did not find that John Doe's single comment in the private group chat caused a material and substantial disruption of the Hopkinton High School. They also did not find that John Doe used Hopkinton Public Schools resources when he made the comment in the private group chat.

21. John Doe attended a disciplinary hearing on February 12, 2019. At the hearing, Assistant Principal Pominville read the findings contained in the investigation report and asked Doe to respond to those findings; the school did not present any additional evidence against Doe.

22. Later that day, Defendant Bishop informed John Doe that Doe was suspended from school for three days for a purported violation of Hopkinton High School's Student Code of Conduct. A true and accurate copy of the suspension letter, redacted to protect the privacy of the minor student(s) named therein, is attached hereto as **Exhibit B**.

23. Bishop based the suspension on the school's "Cyber-Bullying/Bullying" policy (the "bullying policy"). However, the bullying policy does not apply to single incidents of speech or conduct, nor does it apply to speech that is not communicated to the alleged target of bullying. It also does not apply to online speech that is published without the use of Hopkinton Public Schools computer equipment, <u>unless</u> the speech materially and substantially disrupts the educational process of the school.

24. Specifically, "bullying" is defined in the Hopkinton High School Student Code of Conduct as "repeated" acts or expressions "directed at a target" that cause "physical or emotional harm to the target or damage to the target's property," place "the target in reasonable fear of harm to him/herself, or of damage to his/her property," create "a hostile environment at school for the target," or "infringe[] on the rights of the target at school."

25. John Doe's speech does not meet this definition. It was a single comment; it was made in a private setting; it was not directed at or communicated to Robert Roe; and Roe himself told administrators that John Doe was "not active" in the behavior about which he and his parent(s) complained, thereby making clear that Doe did not cause Roe any "harm."

26. The "bullying" policy is inapplicable to John Doe's speech for another reason: John Doe's speech was solely on a private social media platform, was not communicated from Hopkinton Public Schools equipment, and did not disrupt the school. The handbook provides that "bullying" on the Internet is only regulated by the student handbook when it is communicated "[t]hrough the use of technology or an electronic device owned, leased or used by the District," or "through the use of technology or an electronic device that is **not** owned, leased or used by the District **if** the act or acts in question: materially and substantially disrupt the education process or the orderly operation of a school."

27. The Hopkinton Public Schools made no finding that John Doe used Hopkinton equipment to communicate on the private group chat, nor that John Doe's speech to the seven other boys in the private group chat caused a material and substantial disruption of the school. In fact, John Doe did not use such equipment, and no such disruption occurred.

28. John Doe has a right to freedom of speech and expression protected by the First Amendment to the United States Constitution. Under the First Amendment, public schools may not punish students for their speech unless such speech materially and substantially disrupts the work of the school, or meets certain other exceptions not present here.

29. Article 16 of the Massachusetts Declaration of rights provides, "The right of free speech shall not be abridged."

30. Further, under G.L. c. 71, § 82, "The right of students to freedom of expression in the public schools of the commonwealth shall not be abridged, provided that such right shall not cause any disruption or disorder within the school."

31. Here, John Doe's speech did not cause any disruption or disorder within Hopkinton High School. Indeed, on information and belief, John Doe's speech was not even viewed or communicated within Hopkinton High School—at least not until Hopkinton assistant principals seized a student's phone and reviewed the content of the private Snapchat group text. Nor did John Doe communicate his statement to Robert Roe, directly or indirectly, at any time.

32. Defendants imposed a three-day suspension on John Doe for private speech that is protected by the First Amendment, Art. 16, and G.L. c. 71, § 82, and which is not regulated by the "bullying" policy under which Doe was punished.

33. Doe has served his suspension, but the discipline remains on his permanent record as a Hopkinton High School student. Unless the Court grants injunctive relief to clear Doe's

suspension from his record, Doe will be required to notify any college or university to which he applies of the discipline imposed—a disclosure that may imperil his prospects as a college applicant.

34.     Even after being repeatedly informed that Doe's speech is protected and therefore not subject to discipline, Carol Cavanaugh, the superintendent of schools, has refused to rescind the suspension.

## COUNT I

### Declaratory and Injunctive Relief Pursuant to 42 U.S.C. § 1983
### Violation of the First Amendment to the United States Constitution

36.     John Doe repeats and incorporates the factual allegations above as if fully set forth herein.

37.     The First Amendment to the U.S. Constitution provides that "Congress shall make no law . . . prohibiting the free exercise [of religion]; or abridging the freedom of speech . . . ." U.S. Const. Amend. I.  The Defendants are bound by the First Amendment.

38.     Defendants have violated the First Amendment because, *inter alia,* they imposed discipline on John Doe for speech that is protected by the First Amendment, and which did not cause any disruption or disorder within the school.

39.     The actions of the Defendants have caused and threaten to cause irreparable harm to Doe by depriving him of his right to freedom of speech and expression and imperiling his future applications to college.

## **COUNT II**

**Declaratory and Injunctive Relief Pursuant to 42 U.S.C. § 1983**
**Violation of the Fourteenth Amendment to the United States Constitution**

41. Doe repeats and incorporates the factual allegations above as if fully set forth herein.

42. The Fourteenth Amendment provides that no State may deprive persons of liberty without due process of law. The Fourteenth Amendment applies to towns such as Hopkinton, and to its officials.

43. Under the Fourteenth Amendment, town officials may not act in a manner that is arbitrary, capricious, or unreasonable.

44. Here, Defendants acted in an arbitrary, capricious and unreasonable manner by punishing John Doe for a single instance of private, out-of-school speech that did not violate any school policy, which Doe did not communicate within the school, and which did not cause any disruption or disorder within the school.

45. Defendants acted in an arbitrary, capricious and unreasonable manner by imposing the serious disciplinary punishment of suspension on Doe based on Doe's single remark about another student's appearance made in a small, private discussion outside of school and outside the student's presence.

46. The actions of the Defendants have caused and threaten to cause irreparable harm to Doe by depriving him of his right to due process, and by maintaining a disciplinary infraction on his record that threatens to imperil with his future applications to college.

### COUNT III

**Declaratory Judgment under G.L. c. 231A, § 1 et seq.
Violation of Art. 16 of the Massachusetts Declaration of Rights**

48. John Doe repeats and incorporates the factual allegations above as if fully set forth herein.

49. Article 16 of the Massachusetts Declaration of rights provides, "The right of free speech shall not be abridged."

50. By their actions set forth above, Defendants have violated John Doe's right to freedom of speech and of expression protected by Art. 16.

51. The actions of the Defendants have caused and threaten to cause irreparable harm to Doe by depriving him of his right to freedom of speech and expression, and by interfering with his future applications to college.

### COUNT IV

**Declaratory Judgment under G.L. c. 231A, § 1 et seq.
Violation of G.L. c. 71, § 82**

52. John Doe repeats and incorporates the factual allegations above as if fully set forth herein.

53. Under G.L. c. 71, § 82, "The right of students to freedom of expression in the public schools of the commonwealth shall not be abridged, provided that such right shall not cause any disruption or disorder within the school."

54. Section 82 protects the free speech rights of high school students limited only by the requirement that any expression be non-disruptive within the school.

55. Defendants imposed a three-day suspension on John Doe based on speech that did not cause any disruption or disorder within the school. In so doing, they violated John Doe's rights under Section 82.

56. The actions of the Defendants have caused and threaten to cause irreparable harm to Doe by depriving him of his right to freedom of speech and expression and by interfering with his future applications to college.

PRAYERS FOR RELIEF

WHEREFORE, John Doe, by and through his mother and next friend, Jane Doe, respectfully requests that this Court:

(1) enter a declaratory judgment in his favor on all counts of the complaint;

(2) issue a permanent injunction enjoining Defendants from continuing to maintain the unlawful three-day suspension on John Doe's record;

(3) issue a permanent injunction restraining Defendants from continuing to deny John Doe his right to freedom of speech and his right to due process;

(4) issue a declaratory judgment that Defendants' acts deprived John Doe of his rights under Art. 16 of the Massachusetts Declaration of Rights and G.L. c. 71, § 82;

(5) enter a permanent injunction restraining Defendants from continuing to violate John Doe's rights under Article 16 of the Massachusetts Declaration of Rights and G.L. c. 71, § 82.

(6) award to Plaintiff his reasonable costs and attorneys' fees in this action pursuant to 42 U.S.C. § 1988; and

(7) grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

JOHN DOE, by and through his Mother and Next Friend, JANE DOE,

By his attorney,

_____
Alexandra H. Deal (BBO #660645)
DEAL LAW
P.O. Box 560104
West Medford, MA 02156
(781) 219-3749
alex@ahdeallaw.com

June 24, 2019