UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

Civil Action No. 19-CV-11384

JOHN DOE, by his Mother and Next Friend, JANE DOE,

        Plaintiff,

v.

CAROL CAVANAUGH, in her Official Capacity As Superintendent of the Hopkinton Public Schools; EVAN BISHOP, in his Official Capacity As Principal of Hopkinton High School, and HOPKINTON PUBLIC SCHOOLS,

        Defendants.

**DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED**

**I.    Introduction**

The Plaintiff ("Student Doe"), a minor, was suspended for three days from Hopkinton High School after a school investigation determined he participated in a "SnapChat" message group designed to bully and harass another student referred to herein as "Student Roe." Plaintiff subsequently served his three-day suspension. Student Doe now asks this Court to grant declaratory and injunctive relief to enjoin the Defendants from maintaining the three-day suspension on Student Doe's record because it allegedly was unlawful and violated his federal and state rights derived from the First Amendment, Fourteenth Amendment, and Article 16 of the Massachusetts Declaration of Rights. Plaintiff also seeks an award of costs and attorney fees along with declaratory judgments that his rights were violated. The Complaint brings four Counts against the Defendants:

1

Count I:       Violation of the First Amendment to the United State Constitution as enforced by 42 U.S.C. §1983

Count II:      Violation of the Fourteenth Amendment to the United State Constitution as enforced by 42 U.S.C. §1983 (silent on procedural or substantive and defendants read and address it as raising both)

Count III:     Violation of Art. 16 of the Massachusetts Declaration of rights as enforced by M.G.L. c. 231A, §1 et seq.

Count IV:      Violation of M.G.L. c. 71, §82 as enforced by M.G.L. c. 231A, §1 et seq.

Defendants have subsequently moved under the Federal Rules of Civil Procedure 12(b)(6) for dismissal for failure to state a claim upon which relief may be granted.

## II.    Legal Standards

In considering a motion to dismiss under Federal Rules of Civil Procedure 12(b)(6), the Court will dismiss a claim that fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To state a plausible claim, a complaint need not contain detailed factual allegations but must recite facts sufficient at least to "raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. at 555. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. (quoting *Twombly*, 550 U.S. at 557). Ultimately, "[a] claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. When considering the motion, the Court can consider implications from documents attached to or fairly incorporated into the complaint, facts susceptible to judicial notice,

and concessions in a plaintiff's response to the motion to dismiss. *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55-56 (1st Cir. 2012).

### III. Factual Background

In deciding Defendants' motion to dismiss, the Court accepts the factual allegations in the complaint as true but is "not bound to accept . . . a legal conclusion couched as a factual allegation." *San Gerónimo Caribe Project, Inc. v. Acevedo-Vila*, 687 F.3d 465, 471 (1st Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation mark omitted). Defendants identify the following paragraphs from the Complaint as having legal conclusions couched as a factual allegation that need not be assumed true for purposes of this motion: ¶¶12, 15 describing the speech as "private" i.e. a legal designation; ¶¶ 23, 24, 25, and 26 making legal arguments to suggest punishment not following policy; and ¶¶44 and 45 making bald accusations of arbitrary, capricious, and unreasonable action. For purposes of this motion, the relevant facts, ignoring the legal conclusions identified above, are derived from the Plaintiff's Complaint and assumed to be true.

On February 3, 3019, the Hopkinton Public Schools received a "bullying report" from a parent of Student Roe. *Complaint, Doc 1,* ¶5. The report alleged bullying going on within a group of boys on the HHS boys Ice Hockey team. *Exhibit A to Complaint*, *Doc 1-1*, pg. 2. The report asserted that pictures and videos of Student Roe were taken without his permission and circulated amongst the hockey team. *Complaint, Doc 1,* ¶5; *Exhibit A to Complaint*, *Doc 1-1*, pg. 2. These pictures were shared amongst a group of eight boys, including Student Doe, through a private "SnapChat" group. *Id.* at ¶15. Consequently, Student Roe reported feeling "alone." *Id.* at ¶7. The administration subsequently conducted an investigation which included questioning the involved students and other witnesses. *Id.* at ¶6. During the course of this investigation, the administration discovered and reviewed the chat texts and remarks made about Student Roe. *Id.* at ¶15. The

administration determined that Student Doe was a member of the "SnapChat" group and he made a disparaging comment about Student Roe in the private group chat. *Id.* at ¶17; *Exhibit A to Complaint, Doc 1-1,* pg. 4.

As a result, Student Doe attended a disciplinary hearing on February 12, 2019. *Id.* at ¶21. At that hearing, Student Doe was presented with the findings of the investigative report and given the opportunity to respond. *Id.* After this hearing, Student Doe received a three-day suspension for a violation of Hopkinton high School's Student Code of Conduct, specifically the "Cyber-Bullying/Bullying Policy. *Id.* at ¶¶22, 23.

## IV.     Anti-bullying Policy

Hopkinton Public School's bullying prevention and intervention plan fulfills the legislative mandate that each district develop a plan to guide its bullying prevention and intervention efforts. *See* G.L. c. 71, §370. Most importantly, the execution of the plan helps keep the students of Hopkinton safe from the harmful effects of bullying. Notably, the Complaint does not challenge the student bullying policies of Hopkinton Public Schools as unconstitutional. Rather, it suggests that the policies were inapplicable to the situation and thus the suspension should be overturned by this Court's intervention. *See Complaint, Doc 1,* ¶¶24-33, 44, 45.

However, a complete reading of the Student Code of Conduct shows that Student Doe's behavior is prohibited based on the facts of the Complaint. Because of the incorporation and direct reference to it by Plaintiff, this Court is not precluded from viewing the student handbook policy to decide this motion because it is a central document used for imposing the discipline upon Plaintiff. *See Schatz,* 669 F.3d at 55-56 (the Court can consider implications from documents attached to or fairly incorporated into the complaint, facts susceptible to judicial notice, and concessions in a plaintiff's response to the motion to dismiss).

The editing required to make a coherent sentence in ¶24 of the Complaint rendered the policy incomplete. *See Complaint, Doc 1, ¶24*. The policy in full reads that "bullying" is:

> "the repeated use **by one or more students** of a written, verbal, or electronic expression or a physical act or gesture or any combination thereof, directed at a target that: causes physical or emotional harm to the target or damage to the target's property; places the target in reasonable fear of harm to himself or herself or of damage to his or her property; creates a hostile environment at school for the target; infringes on the rights of the target at school; or materially and substantially disrupts the education process or the orderly operation of the school." (**emphasis added**)

*See Exhibit A to this Memorandum, attached herewith, Bullying Policy*. Thus, the policy when properly read requires the behavior to be repeated not the individual student's involvement.

The facts of the Complaint, discussed further below, thus demonstrate, contrary to the legal arguments and conclusions of ¶¶23, 24, 25, 26, 44, 45 of the Complaint, that the policy when read in full was violated. For this reason alone, the cause of action can be dismissed in its entirety in so far as it seeks judicial review of a school principal's disciplinary decisions. *See Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 266 (1988) ("[T]he education of the Nation's youth is primarily the responsibility of parents, teachers, and state and local school officials, and not of federal judges.").

**V.     Argument**

The Complaint lacks a cause of action because the speech Student Doe engaged in was part of repeated conducted designed to bully and harass Student Roe. Such speech which infringes on the rights of another person, whether on campus or off campus, is not within the protections of the First Amendment. Further, a school administration has authority to discipline students for speech that will foreseeably cause a substantial disruption. Student Doe was properly punished for participating in conduct disruptive to the school, and this punishment did not impermissibly infringe upon his rights as Student Doe was afforded the protections of a hearing and investigation.

**A.     Counts I and III alleging violations of the First Amendment and Article 16 fail to state a claim because the school administration has legal authority to discipline students for bullying and for engaging in disruptive school speech as alleged in the Complaint.**

The analysis of a cause of action under Article 16 of the Massachusetts Declaration of Rights is the same as under the First Amendment to the United States Constitution. *Reaves v. Corr. Med. Servs.,* 20 Mass. L. Rep. 67 (2005). *See also Opinion of the Justices*, 387 Mass. 1201, 1202 (1982). This memorandum will proceed to only discuss the First Amendment with the understanding that the same arguments are equally applicable to Count III under Article 16.

As such, the controlling case law for most First Amendment issues within the public-school context remains *Tinker v. Des Moines Independent Community School Dist.*, 393 U.S. 503 (1969). *Tinker* recognized that teachers and other public-school officials have "comprehensive authority." *Tinker*, 393 U.S. at 507. Since *Tinker*, the Supreme Court continues to make clear that judges must be careful to ensure that the federal courts do not impermissibly interfere with the disciplinary decisions of school administrations. See *Bd. of Educ., Island Trees Union Free Sch. Dist. v. Pico*, 457 U.S. 853, 864, (1982) ("[F]ederal courts should not ordinarily 'intervene in the resolution of conflicts which arise in the daily operation of school systems.'" (quoting Epperson v. Arkansas, 393 U.S. 97, 104, (1968))).

Specifically, the standard of *Tinker* is that schools can limit student speech that "materially and substantially interferes with the requirements of appropriate discipline in the operation of the school" *Tinker*, 393 U.S. at 513. The standard can be satisfied either by showing a disruption has occurred or showing that the speech gave rise to a reasonable forecast by the school administration of substantial disruption. *Id.*

Thus, under *Tinker*, a school does not violate the First Amendment when it disciplines a student for speech which materially disrupts classwork or involves substantial disorder or invasion

of the rights of others. *See Tinker,* 393 U.S. at 503-14. Neither does a school violate the First Amendment when it punishes off-campus speech which foreseeably will reach and disrupt the school community. *See Bell v. Itawamba County Scho. Bd.*, 799 F.3d 379, 390 (5th Cir. 2015) (student who engaged in cyberbullying off campus is not protected because online harassment of other school members satisfies the "substantial disruption" standard for restricting student speech); *Kowalski v. Berkeley County Sch.*, 652 F.3d 565 (4th Cir. 2011) (ruling that it is reasonably foreseeable that the speech of a student who created a MySpace page that successfully invited others to make offensive comments and bully another student would reach the school and this satisfies the *Tinker* requirements justifying the action taken by school officials.).

Here, the Complaint states that Student Doe participated by being a member of the "SnapChat" group and that he had participated in the disparaging comments regarding Student Roe. *Complaint, Doc 1,* ¶¶14, 17. The pictures were taken in the school locker rooms, shared on the bus, and at school sponsored ice hockey events such as team dinners. *See Exhibit A to Complaint, Doc 1-1*. Further, the Complaint states that the "SnapChat" group resulted in Student Roe feeling isolated and alone. *Id.* at ¶7; *See also Exhibit A to Complaint, Doc 1-1,* pg. 2-4.

Despite the Complaint highlighting the fact that Student Roe stated that Student Doe was not "active in isolating" him, Student Roe also stated that "they all talked about it openly." *See Exhibit A to Complaint, Doc 1-1,* pg. 3. Further, Student Doe admits during the investigation to his understanding that the behavior was harassment. *Id.* at pg. 4. The Complaint's suggestion by legal argument that the fact that Student Roe commented on Student Doe's 'lesser involvement' is dispositive in showing a First Amendment violation is misguided. The investigation still found Student Doe participated in the harassing behavior. *Id.* at pg. 4. His 'lesser involvement' as a fact merely speaks as a mitigating factor for the punishment rather than a dispositive fact.

Thus, the alleged facts of the Complaint are conclusive that the "SnapChat" group was a substantial disruption or, at the minimum, that the administration forecasted them as being disruptive for Student Roe. Student Roe had to transfer classes away from the involved students. *Exhibit A to Complaint, Doc 1-1,* pg. 4. Student Roe felt alone and isolated. *Id.; See also Complaint, Doc 1, ¶7* Harassment of other school members satisfies the "substantial disruption" standard for restricting student speech. *See Bell*, F.3d at 390; *Kowalski*, 652 F.3d 565; *See also* G.L. c. 71, §370. Therefore, the Plaintiff does not demonstrate a right to relief because it fails to factually allege how Student Doe's actions are outside the *Tinker* permissions for discipline given the admissions of harassment incorporated by *Exhibit A to the Complaint*. Accordingly, Count I and Count III should be dismissed as a permissible restriction under *Tinker* of student speech causing a substantial disruption to the educational mission of a public school.

**B.     Count II alleging Fourteenth Amendment *Procedural* Due Process Violations fails to state a claim because the Complaint demonstrates that Student Doe was afforded a proper hearing.**

The controlling case law for Fourteenth Amendment Procedural Due Process Violations in the public-school short suspension context is *Goss v. Lopez*, 419 U.S. 565 (1975). In *Goss*, the United States Supreme Court ruled that "at the very minimum, therefore, students facing suspension and the consequent interference with a protected property interest must be given some kind of notice and afforded some kind of hearing." *Gross*, 419 U.S. at 579. *Gross* states that "[s]tudents facing temporary suspension have interests qualifying for protection of the Due Process Clause, and due process requires, in connection with a suspension of 10 days or less, that the student be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story.." *Id.* at 581. *Gross* continued by emphasizing that the case "stop[s] short of construing the

Due Process Clause to require, countrywide, that hearings in connection with short suspensions must afford the student the opportunity to secure counsel, to confront and cross-examine witnesses supporting the charge, or to call his own witnesses to verify his version of the incident." *Id.* at 583.

Here, the Plaintiff admits that Student Doe attended a disciplinary hearing on February 12, 2019 where the Assistant Principal read the findings of the investigation report and asked Student Doe to respond to those findings. *Complaint*, *Doc 1*, ¶21. It was only after this hearing that a suspension was issued. *Id.* at ¶22. As such, the Complaint factually states that the Defendants complied with the procedural due process obligations of *Gross*. Accordingly, the Complaint fails to state a procedural due process violation against Defendants and Count II should be dismissed as it relates to procedural due process violations.

**C.    Count II alleging Fourteenth Amendment *Substantive* Due Process Violations fails to state a claim because Exhibit B of the Complaint shows the three-day suspension cannot be characterized as shocking to the conscience.**

"The touchstone of [substantive] due process is protection of the individual against arbitrary action of government." *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998). It is well-settled that "'only the most egregious official conduct can be said to be 'arbitrary in the constitutional sense.'" *Id.* at 846 (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 129, 112 S. Ct. 1061, 117 L. Ed. 2d 261 (1992)). "Executive branch action that sinks to the depths of shocking the contemporary conscience is much more likely to find its roots in conduct intended to injure in some way unjustifiable by any government interest." *Id.* at 119.

The test for a substantive due process violation is primarily concerned with "violations of personal rights . . . so severe . . . so disproportionate to the need presented, and . . . so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to a brutal and inhumane abuse of official power literally shocking to the conscience." *Gonzalez-Fuentes v.*

9

*Molina*, 607 F.3d 864, 881 (1st Cir. 2010) (quoting *Moran v. Clarke*, 296 F.3d 638, 647 (8th Cir. 2002) (en banc) (alterations in original)) *See also I.U. v. Pioneer Valley Chinese Immersion Charter Sch.*, No. 14-cv-12709-MAP, 2016 U.S. Dist. LEXIS 124947, at *28 (D. Mass. June 10, 2016) (attached as Exhibit B for Court's convenience). Consistent with these principles, the First Circuit has stated that "the requisite arbitrariness and caprice" for a conscience-shocking executive action "must be stunning, evidencing more than humdrum legal error." *Amsden* v. *Moran*, 904 F.2d 748, 754 n.5 (1st Cir. 1990). Mere violations of state law, even violations resulting from bad faith, do not necessarily amount to unconstitutional deprivations of substantive due process. <u>DePoutot</u> v. <u>Raffaelly</u>, 424 F.3d 112, 119 (1st Cir. 2005). Courts regularly have required something more egregious and more extreme. *Id.*

As such, the Court "must determine whether the official's conduct shocks the conscience" and only after answering that question affirmatively will it move on to inquire whether if any, constitutional right may have been violated by the conscience-shocking conduct and identify the level of protection afforded to that right by the Due Process Clause. <u>DePoutot</u>, 424 F.3d at 118.

Finally, as unfortunate as it may be, "a short suspension from school, however unjust, does not 'shock the conscience' in any objective sense." *Schomburg v. Johnson*, Civil Action No. 08-11361-GAO, 2009 U.S. Dist. LEXIS 24390, 2009 WL 799466, at *4 (D. Mass. Mar. 25, 2009) (attached as Exhibit C for Court's convenience).

Here, the Complaint incorporated the suspension letter which justifies the suspension of Student Doe with nine articulate reasons following the investigation findings. *See Exhibit B, Doc 1-2,* pg. 2. These reasons demonstrate that the action taken by the school were part of the disciplinary process into the alleged bullying behavior and were taken for the permissible purpose

of school discipline. *Id*. There are no alleged facts within the Complaint to show that the school administration acted specifically with the intent to injure Student Doe or with malice or sadism.

Rather, the Complaint alleges Student Doe's disagreement with the punishment as the basis for the substantive due process violation and suggests humdrum legal error by way of legal argument as the cornerstone of the substantive violation. *See Complaint, Doc 1,* ¶¶44, 45. Such disagreement is not shocking to the conscience. *See Amsden*, 904 F.2d at 754 n.5; DePoutot, 424 F.3d at 119.  Accordingly, Count II should be dismissed as it relates to a substantive due process violation because the suspension and its underlying reasons as pled in the Complaint are not shocking to the conscience as required by Fourteenth Amendment precedent.

**D.     Count IV alleging violation of G.L. c. 71, § 82 fails to state a claim because Student Doe's actions contributed to the bullying of Student Roe and this qualifies as a disrupting event within the school and not entitled to G.L. c. 71, § 82 protection.**

The plain meaning of the statutory language of G.L. c. 71, § 82 limits students' rights of free expression only where such expression creates a disruption or disorder within the school. *Pyle v. School Comm.*, 423 Mass. 283, 287 (1996). The authors of the bill intended to codify the First Amendment protections as discussed in *Tinker*. However, the Supreme Judicial Court has made clear that "there is no reason to believe that [subsequent cases enlarging *Tinker*] decided more than ten years after the original enactment of G.L. c. 71, § 82 in any way limit the protection granted under the statute. *Id*. Thus Count IV stands distinct, even if analysis is similar, from the First Amendment issues involved in Counts I and III.

Turning to the plain language of the statute, free speech is permitted to the extent it does not cause "*any* disruption or disorder within the school." *See* M.G.L. c 71, § 82 (*emphasis added*). By contrast, *Tinker* permits free speech to the extent it does not cause *material* disruption or *substantial* disorder or invasion of the rights of others. *See Tinker*, 393 U.S. at 513 (*emphasis*

11

*added*). No Massachusetts state court decision has yet explored factually what constitutes "*any* disruption or disorder" within a school. *Westfield High Sch. L.I.F.E. Club v. City of Westfield*, 249 F. Supp. 2d 98, 111 (D. Mass. 2003). But:

> A reasonable construction of the Act would interpret the adjective "any" to include "prospective" disruption or disorder. A school administrator does not have to wait until disorder or disruption actually ensues; in certain circumstances, a school administrator must be able to prevent disorder or disruption. Thus, a school administrator may, under the Act, deny a student permission to distribute literature before such distribution occurs, but only if the administrator, considering all circumstances known at the time of his or her decision, reasonably forecasts that "any disruption or disorder" will ensue within the school because of the distribution.

*Id*. Thus, a student remains limited in his/her free expression even under G.L. c. 71, § 82 where such expression creates a disruption or disorder or foreseeability of such within the school.

Here, the Complaint states that Student Doe participated in being a member of the "SnapChat" group which took pictures and that Student Doe had participated the disparaging comments regarding Student Roe. *Complaint, Doc 1, ¶¶*14, 17. The pictures were taken in the school locker rooms, shared on the bus, and at school sponsored ice hockey events such as team dinners. *See Exhibit A to Complaint, Doc 1-1*. Further, the Complaint states that the "SnapChat" group resulted in Student Roe feeling isolated and alone. *Id.* at *¶*7; *See also Exhibit A to Complaint, Doc 1-1,* pg. 2-4. Thus, the alleged facts of the Complaint conclude that the "SnapChat" group was a substantial disruption or at the minimum that the administration forecasted them as being disruptive for Student Roe. Student Roe had to transfer classes away from the involved students. *Exhibit A to Complaint, Doc 1-1,* pg. 4. Student Roe felt alone and isolated. *Id.; See also Complaint, Doc 1, ¶*7   Therefore, the Complaint does not demonstrate a right to relief because it fails to factually allege how Student Doe's actions are protected by the statute. Accordingly, Count IV should be dismissed as a permissible restriction of student speech causing a substantial disruption to the educational mission of a public school.

**VI.     Conclusion**

For the foregoing reasons, the Defendants respectfully request that this Honorable Court dismiss the claims against all Defendants.

Respectfully submitted,

DEFENDANTS,

By their attorneys:

*/s/ Matthew T. Goepfrich*
Douglas I. Louison (BBO# 545191)
dlouison@lccplaw.com
Regina M. Ryan (BBO# 565246)
E-mail: rryan@lccplaw.com
Matthew T. Goepfrich (BBO #703445)
E-mail: mgoepfrich@lccplaw.com
Louison, Costello, Condon & Pfaff, LLP
101 Summer Street
Boston, MA 02110
(617) 439-0305

Date:  July 29, 2019

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(A)2

Pursuant to Local Rule 7.1(A)(2), counsel for the Defendants certify that they have conferred with opposing counsel on July 29, 2019 at 3:36pm by telephone conference in good faith to resolve or narrow the issues in this motion.

/s/*Matthew T. Goepfrich*
Matthew T. Goepfrich

## CERTIFICATE OF SERVICE

I, Matthew T. Goepfrich, hereby certify that on 29th day of July, 2019, a true copy of the above document was served electronically upon all counsel of record.

/s/ *Matthew T. Goepfrich*
Matthew T. Goepfrich