UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHN DOE, by his Mother and Next Friend JANE DOE )<br>)<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>)<br>CAROL CAVANAUGH, in her Official Capacity, EVAN BISHOP, in his Official Capacity, and HOPKINTON PUBLIC SCHOOLS )<br>)<br>)<br>)<br>)<br>Defendants, ) | CIVIL ACTION<br>No. 19-cv-11384-WGY |
| BEN BLOGGS, by his Mother and Next Friend, JANE BLOGGS )<br>)<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CAROL CAVANAUGH, in her Official Capacity, EVAN BISHOP, in his Official Capacity, and HOPKINTON PUBLIC SCHOOLS )<br>)<br>)<br>)<br>)<br>Defendants. ) | CIVIL ACTION<br>No. 19-cv-11987-WGY |

YOUNG, D.J.                                                February 5, 2020

**ORDER**

Ben Bloggs ("Bloggs") a high school student who alleges that school administrators and the school violated his rights to

free speech under state and federal law, has brought the lawsuit Bloggs v. Cavanaugh, 19-cv-11987 ("Bloggs Civil Case"), through his mother and next friend Jane Bloggs. He brings claims pursuant to sections 1983 and 1988 of title 42 of the United States Code, and the First Amendment to the United States Constitution, as well as Massachusetts General Laws, chapter 71, section 82; chapter 231A section 1; and chapter 12 section 11. He also seeks a declaration that Hopkinton Public School's ("Hopkinton" or the "School") anti-bullying policy and the enacting Massachusetts statute are unconstitutionally vague and overbroad. See generally Bloggs Civil Case, Compl. Declaratory Injunctive Relief ("Compl."), ECF No. 1.

The suit arises out of an incident of alleged bullying on the part of Bloggs and seven other students on the Hopkinton varsity hockey team (the "Team"). A parent of "Robert Roe", a student on the Team, filed a report with the School alleging that a member of the Team had taken videos of Roe without his permission and was sharing that video with other students as part of a larger pattern of harassment. Compl. ¶ 15. The report named four other students as witnesses or participants, though Bloggs was not among them. Id. While investigating the incident, school administrators discovered a private Snapchat group chat entitled "Geoff Da Man" consisting of eight members of the Team, one of whom was Bloggs. Roe himself was not a

[2]

member of the Snapchat group. Id. ¶ 21. While much of the communication on the Snapchat group was innocent, it also included derogatory commentary about Roe, along with pictures and videos of him. Id. ¶¶ 24, 25. Bloggs himself posted the following in the chat: "Are [Roe's] parents ugly too or did he just get bad genes." Bloggs Civil Case, Defs.' Mem. Law Supp. Mot. Dismiss, ("Defs.' Mem.") 5, Ex. 2, Snapchat Screenshots 4, ECF No. 14-2.

Based on the investigation, the School Principal, Evan Bishop ("Bishop"), suspended Bloggs from school for five days and from the Team for the remainder of the season. Compl., Ex. F, Notice of Short-Term Suspension Finding 2-3, ECF No. 1-7. The decision to suspend Bloggs was based on his participation in the Snapchat group, reports of additional videos and photos that were not retained on Snapchat, and reports of active exclusion aimed at Roe. Id. Additionally, Bishop found that "[t]he conduct caused emotional harm to the target, created a hostile environment for him during school-sponsored events and activities and infringed on his rights at school." Id. at 2.

Bloggs brings five counts against the School in the complaint. Count I requests declaratory and injunctive relief pursuant to section 1983, alleging that Hopkinton violated Bloggs' right to Freedom of Speech. Compl. ¶¶ 61-65. Count II also requests declaratory and injunctive relief pursuant to

[3]

section 1983, alleging violation of Bloggs' right to Freedom of Association. Id. ¶¶ 66-71. Count III requests declaratory judgment pursuant to section 1983 because the Massachusetts' anti-bullying statute, Massachusetts General Law chapters 71, sections 37H and 37O, and Hopkinton's Bullying Policy violate the First Amendment due to being vague and overbroad. Id. ¶¶ 72-79. Count IV alleges that the School's actions violate Article 16 of the Massachusetts Declaration of Human Rights and requests relief under the Massachusetts Civil Rights Act, Massachusetts General Law chapter 12, section 11I. Id. ¶¶ 80-83. Finally, Count V alleges violation of Massachusetts' free speech statute, Massachusetts General Law chapter 71, section 82.

Hopkinton has moved to dismiss Bloggs' complaint for failure to state a claim upon which relief may be granted. See Bloggs Civil Case, Defs.' Carol Cavanaugh, Evan Bishop, Hopkinton Public School's Mot. Dismiss Pls.' Compl., ECF No. 13. The parties have fully briefed the motion. See Defs.' Mem.; Bloggs Civil Case, Pl.'s Opp'n Defs.' Mot. Dismiss, ("Pl.'s Opp'n"), ECF no. 18. The Court heard arguments on January 13, 2020 and dismissed all counts against School Superintendent Carol Cavanaugh ("Cavanaugh") and School Principal Evan Bishop in their individual and official capacity, taking all others

under advisement.  Bloggs Civil Case, Electronic Clerk's Notes Mot. Hr'g 1/13/2020, ECF No. 25.

This case is the second before the court stemming from the same incident of alleged bullying.  The other case, brought by "Doe," another member of the Team, is Doe v. Cavanaugh, 19-cv-11384-WGY ("Doe Civil Case").  Bishop, Hopkinton and Cavanaugh filed a motion to dismiss, Doe Civil Case, Defs.' Mot. Dismiss First Am. Compl. Failure State Claim Relief Granted, ECF No. 22, and in the motion session of October 17, 2019, this Court denied their motion to dismiss as to Counts I, II, and IV (which correspond to Counts I, II, and V of Bloggs' Complaint), and took Count III (which is identical to Count III of Bloggs' Complaint) under advisement.  Doe Civil Case, Electronic Clerk's Notes Mot. Hr'g 10/17/2019, ECF No. 31.  Bishop, Hopkinton and Cavanaugh, on December 17, 2019 moved to consolidate the two cases, see Doe Civil Case, Defs.' Mot. Consolidation, ECF No. 43, and this Court granted the motion insofar as any of Bloggs' counts survive the motion to dismiss.  Doe Civil Case, Order Mot. Consolidate Cases, ECF No. 46.

Since four of Bloggs' five claims survive the motion to dismiss, the cases will be consolidated.  Fed. R. Civ. Proc. 42(a)(2).

In considering a motion to dismiss, the court accepts all factual allegations in the complaint as true and draws all

[5]

reasonable inferences in plaintiff's favor. See Langadinos v. American Airlines, Inc., 199 F.3d 68, 69 (1st Cir. 2000). Under Federal Rule of Civil Procedure 12(b)(6), a claim that does not plead "enough facts to state a claim to relief that is plausible on its face" will be dismissed. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). A court does not have to accept plaintiff's assertions as true if the allegations are conclusory but "couched as a factual allegation." Id. at 555 (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)).

The Supreme Court defined the standard for when schools can constrict student speech in Tinker v. Des Moines Indep. Cmty Sch. Dist., 393 U.S. 503 (1969). Under the Tinker standard, student speech "may be regulated only if it would substantially disrupt school operations or interfere with the right of others." Saxe v. State Coll. Area Sch. Dist., 240 F.3d 200, 214 (3d Cir. 2001); see also Tinker, 393 U.S. at 513; Pyle v. South Hadley Sch. Comm., 861 F. Supp. 157, 166 (D. Mass. 1994) (Ponsor, J.)).

Bloggs pleads sufficient facts with respect to Count I to allow an inference that school administrators could not reasonably forecast his private comments would cause substantial material disruption or infringe on the rights of others. Compl. ¶ 49. The evidence on the record establishes that Bloggs made several comments in a private group chat, and may have engaged

[6]

in other exclusionary behavior, but that Roe never saw them until the investigation. Id. ¶ 47. Bloggs pointed to several other cases that have found the disciplining of minor disruptions to be a violation of students' rights under the Tinker standard. See Pl.'s Opp'n 10 (citing J.S. ex rel. Snyder v. Blue Mountain Sch. Dist., 650 F.3d 915, 929 (3d Cir. 2011); T.V. ex rel. B.V. v. Smith-Green Comm'ty Sch. Corp., 807 F. Supp. 2d 767, 784 (N.D. Ind. 2011)). Hopkinton cited cases, conversely, indicating that cyber-bullying, even outside of school, can qualify as a substantial disruption. Defs.' Mem 9 (citing Bell v. Itawamba County Sch. Bd. 799 F. 3d 379, 390 (5th Cir. 2015); Kowalski v. Berkeley County Sch. 652 F.3d 565 (4th Cir. 2011); Sypniewski v. Warren Hills Regional Bd. of Educ., 307 F.3d 243, 257 (3d Cir. 2002); Dunkley v. Board of Educ., 216 F. Supp. 3d 485 (D.N.J. 2016)). Whether Hopkinton was justified in suspending Bloggs is a factual question, and the motion to dismiss Count I is therefore denied.

Bloggs also pleads sufficient facts with respect to Count II to allow an inference that School administrators punished him for the actions of other students rather than his own, a potential violation of his freedom of association. Bloggs' argument is that other students were responsible for the alleged bullying that led to the initial report, and Roe learned of his derogatory comments only due to the School investigation.

[7]

Compl. ¶¶ 54, 69.  Bishop, Hopkinton and Cavanaugh dismiss Bloggs argument as asserting a right to "socialize through social media."  Defs.' Mem. 12.  They point to case law indicating there is no "generic right to mix and mingle," <u>URI Student Senate</u> v. <u>Town of Narragansetty</u> 631 F.3d 1, 12-13 (1st Cir. 2011), and that "social friendships . . . are legally insufficient to be protected by the First Amendment." <u>Pollard</u> v. <u>Georgetown School District</u> 132F. Supp. 3d 225 (D. Mass. 2015) (Casper, J.).  Defs.' Mem. 12.  However, Bloggs is not asserting a generic right to socialize, but rather a right to avoid collective punishment based on his association with other individuals.  Pl.'s Opp'n 12-13.  "Guilt by association alone . . . is an impermissible basis upon which to deny First Amendment rights." <u>Healy</u> v. <u>James</u>, 408 U.S. 169, 186 (1972).  A court could infer under these facts that Bloggs was punished for his association with the other members of the "Geoff Da Man" chat, so the motion to dismiss Count II is denied.

Bloggs pleads sufficient facts as well to indicate that Massachusetts' anti-bullying statute, Mass. Gen. Law ch. 71, §§ 37H, 37O, and Hopkinton's Bullying Policy may be vague and overbroad.  Hopkinton's Bullying Policy, which mirrors the language of the statute, defines "bullying" as:

> the repeated use . . . of a written, verbal or electronic expression or a physical act or gesture or any combination thereof, directed at a victim that: (i)

> causes physical or emotional harm to the victim or damage to the victim's property; (ii) places the victim in reasonable fear of harm to himself or of damage to his property; (iii) creates a hostile environment at school for the victim; (iv) infringes on the rights of the victim at school; or (v) materially and substantially disrupts the education process or the orderly operation of a school.

Compl., Ex. C, Bullying Prevention & Intervention (the "Policy"); see also Mass. Gen. Law ch. 71, §§ 37H, 37O. Bloggs argues the Policy and the Massachusetts Statute are overbroad because they encompass speech in a school environment that does not meet the Tinker standard, specifically speech that "causes emotional harm to the target" without causing substantial disruption or depriving a student's rights. Compl. ¶ 6; Pl.'s Opp'n 14-16. Bloggs also argues the statute and Policy are unconstitutionally vague because the term "emotional harm" is undefined, thus inviting subjective and arbitrary enforcement. Compl. ¶ 6; Pl.'s Opp'n 17-18.

The overbreadth doctrine permits litigants to challenge statutes "not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression." Broadrick v. Oklahoma, 413 U.S. 601, 612 (1973). Claimants bear the burden of establishing, "'from the text of [the law] and from actual fact,' that substantial overbreadth

[9]

exists." Virginia v. Hicks, 539 U.S. 113, 122 (2003) (internal citations omitted).  Here, Bloggs can point to multiple cases that have found school policies governing areas such as harassment and abuse to be overbroad.  See Pl.'s Opp'n 16 (citing Saxe v. State College Area Sch. Dist., 240 F.3d 200, 217 (3rd Cir. 2001); Flaherty v. Keystone Oaks Sch. Dist., 247 F. Supp. 2d 698, 703 (W.D. Penn. 2003)).  It is therefore possible that Bloggs could show at trial that the statute is overbroad as applied to his case.

A statute can be voided for vagueness if the law lends itself to impermissibly subjective interpretation.  See Coates v. Cincinnati, 402 U.S. 611, 612-614 (finding ordinance prohibiting "conduct . . . annoying to persons passing by" impermissibly vague).  A law is void for vagueness only if a person "of common intelligence must necessarily guess at its meaning and differ as to its application." Caswell v. Licensing Comm'n for Brockton, 387 Mass. 864, 873 (1983) (internal citation omitted).  Bishop, Hopkinton and Cavanaugh argue that the statute and Policy are not vague because they ban only speech that is combined with conduct, that is, speech that is "repeated" and "targeted" at an individual.  Defs.' Mem. 14-15. Bloggs contends that because the phrase "emotional harm" is not defined, it allows for impermissibly arbitrary enforcement by administrators.  Pl.'s Mem. 18;  cf. Flaherty v. Keystone Oaks

[10]

Sch. Dist., 247 F. Supp. 2d 698, 704 (W.D. Pa. 2003) (striking down as overly vague school policy that used the undefined terms "abuse," "harassment," "inappropriate," and "offend" because "they are not linked within the text to speech that substantially disrupts school operations."). As with the overbreadth challenge, Bloggs has pled enough facts to show that the policy may be vague and should have the opportunity to develop the application of these facts at trial. The motion to dismiss Count III is therefore denied.

In Count IV Bloggs alleges that Hopkinton violated Article 16 of the Massachusetts Declaration of Rights, granting cause of action under the Massachusetts Civil Rights Act. Mass. Gen. Laws, ch. 71, §§ 11I, 11H. Bloggs argues that Hopkinton interfered with his rights through intimidation, threats, or coercion because "defendants used the pretext of a violation of the Bullying Policy to suspend him . . . ." Pl.'s Opp'n 19, and because Bloggs now avoids joining chat groups out of fear of being implicated in another disciplinary matter. Compl. ¶ 58. The Massachusetts Civil Rights Act provides a remedy for an individual whose rights have been infringed by "threats, intimidation or coercion." Mass. Gen. Law, ch. 12, §§ 11I, 11H. "On its face, section 11I contemplates a two-part sequence: (1) the defendant threatens, intimidates, or coerces the plaintiff,

in order to (2) cause the plaintiff to give up something that the plaintiff has the constitutional right to do." Goddard v. Kelley, 629 F. Supp. 2d 115, 128-29 (D. Mass. 2009) (Saylor, J.) (finding that police use of excessive force in making an arrest (the alleged act of coercion) was not a violation of section 11I, because not aimed at depriving a constitutional right); see also Longval v. Commissioner of Correction, 404 Mass. 325, 333 (1989). Here, Bloggs alleges an act of discipline by Hopkinton that may have violated his constitutional rights, but the idea that the school disciplined him as a pretext for preventing future speech, instead of as punishment for his past conduct, is implausible and he has not pled any facts supporting it. See Columbus v. Biggio, 76 F. Supp. 2d 43, 54 (D. Mass) (Tauro, J.) ("A direct deprivation of rights, even if unlawful, is not coercive because it is not an attempt to force someone to do something the person is not lawfully required to do.") The question of whether coercion, threats, or intimidation has occurred is based on an objective "reasonable person" standard, rather than on whether the plaintiff themselves felt coerced, threatened, or intimidated. Meuser v. Federal Express Corp., 564 F.3d 507, 521 (1st Cir. 2009). Bloggs' experience of subjective fear therefore does not indicate that the school attempted to coerce, threaten, or intimidate him. The motion to dismiss for Count IV is therefore granted.

[12]

Finally, in Count V Bloggs alleges violations of Massachusetts General Laws, chapter 71, section 82, which protects students' right of freedom of expression. Hopkinton argues there has been no violation because the statute grants school officials the right to discipline students in response to "prospective" disruption or disorder. Defs.' Mem. 16-17. In Westfield High Sch. L.LF.E. Club v. City of Westfield, the court read section 82 to include such "prospective" disruption or disorder. 249 F. Supp. 2d 98, 111 (D. Mass. 2003) (Freedman, J.). However, the Supreme Judicial Court has also found that the statute was written to codify the First Amendment protections established by Tinker. Pyle v. School Comm., 423 Mass. 283, 286 (1996). The two parties therefore contest whether an official can discipline a student for any "prospective" disruption, or only for disruption they forecast to be "material" or "substantial." See Defs.' Mem. 17; Pl.'s Opp'n 20 n4. Either way, Bloggs has pled sufficient facts to indicate that the School may have violated his rights for the same reasons in Counts I and II. The motion to dismiss is therefore denied as to Count V.

In summary, Hopkinton's motion to dismiss is DENIED for counts I, II, III, and V, and GRANTED for count IV. The case of Bloggs v. Cavanaugh, 19-cv-11987-WGY is hereby officially

consolidated with <u>Doe</u> v. <u>Cavanaugh</u>, 19-cv-1138-WGY pursuant to Federal Rules of Civil Procedure 42(a)(2).

**SO ORDERED.**

*William G. Young*
WILLIAM G. YOUNG
DISTRICT JUDGE